IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01512-CNS-MEH

JESSE DILLON KIRCHNER,

     Plaintiff,

v.

JILL MARSHALL, and
JEFFERSON COUNTY DISTRICT COURT,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff Jesse Dillon Kirchner, proceeding pro se, alleges violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act by Defendants. ECF 1. Before the Court are both Defendants' Motions to Dismiss ("Motions"). ECF 20 and ECF 21. The Motions are fully briefed, and the Court finds that oral argument would not materially assist in their adjudication. For the reasons that follow, the Court respectfully recommends granting the Motions.

**BACKGROUND**

     For the purposes of this recommendation, the Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in his Complaint. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis). The Court also considers Plaintiff's allegations from his previous lawsuit.

## I.        Plaintiff's Previous Federal Lawsuit

In November of 2011, Plaintiff was arrested for stabbing his brother in the abdomen and charged with attempted murder and assault. *Jesse Dillon Kirchner v. Jill Marshall, et al.*, No. 20-cv-00114-MEH, 2021 WL 243448 (D. Colo. Jan. 25, 2021). A Jefferson County District Court judge presided over his criminal case. *Id*. at *1. A Colorado Public Defender represented Plaintiff at his change of plea hearing. *Id*.  In December of 2013, Plaintiff's guilty plea to the Assault in the Second-Degree, Drugging Victim charge was accepted. *Id*. Plaintiff waived the factual basis and right to appeal. *Id*. The plea permitted the court to find him not guilty of the Assault in the First-Degree charge by reason of insanity. *Id*. Plaintiff was sentenced to four years' incarceration. *Id*. After finishing his sentence, Plaintiff was committed to the Colorado Mental Health Institute in Pueblo ("CMHIP") until restored to sanity. *Id*.

In April of 2018, CMHIP's Chief Executive Officer, Jill Marshall ("Marshall"), filed a "Notice of Temporary Physical Removal for Treatment and Rehabilitation—Increase to Supervised." On May 7, 2018, a Deputy State Public Defender appeared on Plaintiff's behalf. *Id*. Days later, Plaintiff filed a pro se Rule 35 Petition for Post-Conviction Relief, arguing that his plea agreement violated the Double Jeopardy clause, due process, equal protection rights, and was cruel and unusual punishment. *Id*.

In his first lawsuit, Plaintiff challenged his civil commitment and the underlying conviction. *Id*. at *2. He brought eight claims for relief pursuant to 42 U.S.C. § 1983 and alleged violations of several constitutional rights: the Fourth Amendment; the Fifth Amendment; the Sixth Amendment; the Eighth Amendment; and the Fourteenth Amendment. *Id*. In addition, he alleged that Defendants took part in criminal acts including kidnapping. *Id*. Ultimately, Plaintiff sought to have his conviction overturned, his sentence vacated, and release from civil commitment. *Id*.

In that lawsuit, Plaintiff had opportunities to amend his Complaint. *Id*. The Court "gave a thorough legal analysis" of his claims, explaining that there was no basis by which Plaintiff could proceed. *Id*. Plaintiff's Amended Complaint in that suit did not "replead his claims . . . to correct for defects that the Court identified." *Id*. Instead, it incorporated an eighth claim and was used to add legal arguments. *Id*. After Defendants had renewed the Motion to Dismiss, Plaintiff submitted a Supplemental Complaint under the guise of a Motion to Cure Deficiencies. *Id*. In it, Plaintiff added a ninth claim for medical malpractice. *Id*. Ultimately, the Court granted Defendants' motion to dismiss.

## II.     Plaintiff's Current Claim

In his present lawsuit, Plaintiff again challenges his present civil commitment and seeks review of the underlying state court judgment. ECF 1 at 6. He claims that his civil commitment, requiring him to be treated at CMHIP, violates the ADA and Rehabilitation Act. *Id*. He argues that his treatment interferes on his ability to attend classes in-person at Pueblo Community College. *Id*. Plaintiff complains that his civil commitment (and the mental health treatment he is receiving because of it) interfere with his academic pursuit. That interference, he argues, constitutes a form of disparate impact discrimination, in violation of those two statutes. *Id*. at 6-7, 9. "I cannot achieve my future goals . . . unless my record is expunged and my conviction overturned, [my] sentence vacated[,] and [a] secure[d] [] unconditional release from CMHIP." *Id*. at 9. He claims that he has exhausted all resources and avenues to come to a resolution. *Id*.

## LEGAL STANDARDS

## I.     Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id*. (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1002-03 (citations omitted). The present Motion is a facial attack on subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

II.      Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## III.     Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is

qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## ANALYSIS

Defendants raise three arguments for dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). ECF 20; ECF 21. First, they assert Eleventh Amendment immunity protection. ECF 20 at 10-11; ECF 21 at 4-5. Second, they ask the Court to abstain from exercising jurisdiction under the *Rooker-Feldman* abstention doctrine. ECF 20 at 8-9; ECF 21 at 5-6. Third, they contend in the alternative that the Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine. ECF 20 at 9; ECF 21 at 6-7. Because these arguments concern federal subject matter jurisdiction, the Court will address them first, before considering Defendants' arguments for dismissal under Fed. R. Civ. P. 12(b)(6).

## I.      Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)

Eleventh Amendment immunity bars a federal court's subject matter jurisdiction. *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011). "It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). The immunity extends to state agencies functioning as arms of the state. *Colby v. Herrick*, 849 F.3d 1273, 1276-77 (10th Cir. 2017). To determine if an entity is an arm of the state, courts engage in a two-part inquiry:

> "[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing. The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury."

*Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (citing *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996)). Eleventh Amendment immunity extends to state officials sued in their official capacity. *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992) (finding that the Eleventh Amendment bars suit unless the state waives immunity). Claims against state officials in their official capacity are claims against the state. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013).

Nevertheless, Eleventh Amendment immunity is not absolute. *Arbogast v. Kan., Dep't of Lab.*, 789 F.3d 1174, 1181 (10th Cir. 2015). There are three exceptions to its application. *Id*.

> "First, a state may consent to suit in federal court. [] Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. [] Finally . . . a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see also Arbogast*, 789 F.3d at 1181. Waiver must be clearly expressed, such as through participation in a particular federal program. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *see also Davis v. California*, 734 F. App'x 560, 564 (10th Cir. 2018) (explaining that there is "a clear and unequivocal waiver of sovereign immunity for violations of federal statutes prohibiting discrimination by recipients of federal funding"). Any state that violates "section 504 of the Rehabilitation Act . . . or the provisions of any other Federal statute prohibiting discrimination by recipient of Federal financial assistance[]" waives Eleventh Amendment immunity. 42 U.S.C. § 2000d-7. Congress did not abrogate Eleventh Amendment immunity under the ADA. *Bd. of Trs. of Univ. of Al. v. Garrett*, 531 U.S. 356 (2001).

Defendants enjoy Eleventh Amendment Immunity for several reasons. First, as defined by the State of Colorado Constitution, the Jefferson County District Court is an arm of the State. *See*

Colo. Const. art. III; Colo. Const. art. VI, § 1. The Jefferson County District Court enjoys Eleventh Amendment immunity. Second, because Plaintiff sues Marshall in her official capacity, he therefore sues CMHIP. CMHIP is an arm of the State. *Harp v. Dep't of Hum. Servs., Colo. Mental Health Inst. at Pueblo*, No. 11-cv-01972-PAB-CBS, 2012 WL 1885108, at *3 (D. Colo. Mar. 9, 2012). In that way, CMHIP conveys immunity protection to Marshall. Therefore, the Court recommends that the claims be dismissed as they are barred by the Eleventh Amendment.

Although this Court recommends barring Plaintiff's claims due to Eleventh Amendment immunity, there are more jurisdictional defects. The *Rooker-Feldman* and *Younger* abstention doctrines also compel dismissal of Plaintiff's claims.

A.      *Rooker-Feldman* Abstention Doctrine

The *Rooker-Feldman* doctrine prevents a federal district court from hearing claims that either were at issue before the state court or that are inextricably intertwined with the state court's ruling. *D.C.C.A. v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine applies if a favorable ruling in the federal lawsuit requires finding the state court's ruling to be wrong or would render it ineffectual. *Crone v. Dep't of Hum. Servs.*, No. 11-cv-02270-WJM-CBS, 2012 WL 5832438, at *2-3 (D. Colo. Oct. 5, 2012). In other words, a plaintiff may not appeal a state court's ruling to a federal district court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233–34 (10th Cir. 2006); *Davis v. Schnurr*, 818 F. App'x 852 (10th Cir. 2020).

Plaintiff's challenge to the outcome of his state criminal case raises a jurisdictional defect. If his state criminal case has concluded, then the *Rooker-Feldman* doctrine is at issue. To the extent Plaintiff is using this federal lawsuit to obtain relief from his state court conviction and sentence, this Court lacks subject matter jurisdiction. *Crone*, 2012 WL 5832438 at *9.

9

There still may be hearings for the state court to do. For example, a disposition hearing to determine whether Plaintiff may be released from civil commitment. If there is a possibility of ongoing proceedings, then the doctrine of *Younger* abstention from *Younger v. Harris*, 401 U.S. 37 (1971) applies.

B.      *Younger* Abstention Doctrine

The *Younger* abstention precludes a federal court from intruding into an ongoing state criminal prosecution, certain civil enforcement proceedings, or civil proceedings that involve certain orders uniquely in furtherance of the state court's ability to perform its judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). In *Younger*, the Supreme Court refused to exercise jurisdiction over a matter in which there was a parallel, pending state criminal proceeding. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013). "[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). As summarized by the Tenth Circuit,

> *Younger* and its progeny require federal courts to abstain from exercising jurisdiction if: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involved important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'

*Hunter v. Hirsig*, 660 F. App'x 711, 714–715 (10th Cir. 2016) (citing *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)). "*Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Amanatullah*, 187 F.3d at 1163. "*Younger* governs whenever the requested relief

would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

Plaintiff does not dispute that he was the subject of state court proceedings, just the outcome of such proceedings. If, as Defendants argue, those proceedings have not concluded, then the *Younger* abstention doctrine applies. ECF 21 at 5-6. Colorado state courts provide an adequate forum to hear the claims raised in Plaintiff's Complaint. In fact, Plaintiff's Post-Conviction Relief proceedings have occurred in a state court (ECF 58 at 2 in *Kirchner I*), as well as a recent court order acknowledging a change in Plaintiff's supervision (ECF 21 at 6-7). In addition, Plaintiff's criminal proceedings and civil commitment are of important interest to the State. *Id*. at 7. Due to the *Rooker-Feldman* and *Younger* doctrines, the Court recommends that it abstain from hearing all of Plaintiff's claims.

## II.    Failure to State Claims under Fed. R. Civ. P. 12(b)(6)

Application of the Eleventh Amendment and the abstention doctrines both present a jurisdictional defect, warranting dismissal. Nevertheless, for the sake of thoroughness, the Court considers Defendants' Rule 12(b)(6) arguments as well.

The Court begins by addressing Plaintiff's apparent attempt to raise a new claim against Defendants in his Response. ECF 30 at 11, 12. The Court is limited to allegations contained in the Complaint when ruling on a 12(b)(6) Motion to Dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Plaintiff may not use his Response to amend his Complaint. *Luck v. Smith*, No. 17-cv-00183-WJM-NYW, 2017 WL 3970512, *4 (D. Colo. 2017) (citing *In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004)). As such, the 42 U.S.C. § 1983 and 28 U.S.C. § 2254 claims that he asserts for the first time in his Response fall outside

the scope of the pleadings. Nevertheless, even if this Court were to consider them as part of his

Complaint, Eleventh Amendment immunity would bar them.

> A.      Failure to State a Claim under Section 504 of the Rehabilitation Act

"[T]o be entitled to compensatory damages under section 504 of the Rehabilitation Act, a

plaintiff must prove the defendant[s] intentionally discriminated against [him] on the basis of

disability." *Swenson v. Lincoln Cnty. Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1145 (D. Wyo. 2003)

(citing *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir.1999)).

> "To establish a prima facie claim under § 504, a plaintiff must demonstrate that '(1)
> plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate
> in the program; (3) the program receives federal financial assistance; and (4) the
> program discriminates against plaintiff.'"

*Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting

*Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008)). To be able to state a

claim under this Act, Plaintiff would need to allege exclusion by the community college despite

being "'otherwise qualified' to participate." *Barber*, 562 F.3d at 1228.

Plaintiff claims he has Attention Deficit Disorder ("ADD") and Bipolar Disorder, amongst

other conditions, which satisfies the first element. Regardless, he otherwise fails to state a claim

under Section 504 of the Rehabilitation Act. Plaintiff claims that his treatment constitutes disparate

impact discrimination because it prevents him from pursuing his education in-person, and that this

is an inadequate accommodation. ECF 1 at 6-7.  Plaintiff must remain on-site for constant

supervision and his sentence requires him to be at CMHIP until restored to sanity. *Id*. at 7-8. His

inability to attend in-person classes is not the result of CMHIP providing inadequate

accommodations. Rather, it is a legal requirement that CMHIP must uphold. Plaintiff does not

claim that his community college is discriminating against him due to his disabilities. Therefore,

this claim should be dismissed.

B.      Failure to State a Claim under the Americans with Disabilities Act

Title II of the ADA requires public entities to make reasonable accommodations for the disabled. *Thompson v. Colorado*, 278 F.3d 1020, 1029 (10th Cir. 2001); *see* 42 U.S.C. §§ 12101– 12117. To state a claim under Title II, a plaintiff must demonstrate that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Robertson v. Las Animas Cnty. Sheriff's Dep't.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

Plaintiff alleges that he has Bipolar Disorder and ADD (ECF 1 at 19), which satisfies the first element. 42 U.S.C. § 12102 (2009). Nevertheless, he fails to establish disparate impact discrimination under the ADA. Plaintiff claims that he has been "warehoused" by CMHIP, leaving him unable to "finish the . . . summer 2022 college semester." ECF 1 at 6. Effectively, Plaintiff's argument is that receiving treatment from CMHIP prevents him from further pursuing his education. The Complaint is replete with conclusory allegations that Defendants discriminate against Plaintiff based on disability. However, Plaintiff alleges no denial of service, and there are no claims that CMHIP refuses to treat Plaintiff. *See* ECF 1. Plaintiff does not sufficiently establish any exclusion from benefits at CMHIP due to his disability. To claim exclusion from education, Plaintiff must allege that his community college refuses to provide him some service due to his disability. Yet, the Complaint contains no such allegation. Therefore, the Court cannot plausibly infer that Defendants excluded him from benefits in violation of Title II of the ADA.

III.    **No Leave to Amend**

Dismissal of a case is a harsh remedy, and a pro se litigant's pleadings are to be construed liberally. Generally, a court may give such a litigant the opportunity to amend the complaint to

cure a pleading defect. *Hall*, 935 F.2d at 1109-10; *Reynolds v. Shillinger*, 907 F.2d 124, 126 (10th

Cir. 1990). However, a court may dismiss a complaint without an opportunity to amend if "it is

patently obvious that plaintiff could not prevail on the facts alleged and allowing him an

opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281-82 (10th

Cir. 2001) (quoting *Hall*, 935 F.2d at 1110).

Plaintiff amended his complaint twice in his past lawsuit due to his conclusory allegations

and failure to provide supporting facts. The same pleading defects exist in this repeat lawsuit.

Plaintiff has failed to plausibly allege his claims. There is little reason to believe that amendment

would be successful. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("We have

stated that '[d]ismissal of a pro se complaint for failure to state a claim is proper only where . . . it

would be futile to give him an opportunity to amend.'" (quoting *Perkins*, *v. Kan. Dep't of Corr.*,

165 F.3d 803, 806 (10th Cir. 1999)). As such, the Court recommends Plaintiff's claims be

dismissed with prejudice.

## CONCLUSION

Accordingly, this Court respectfully recommends[1] that Defendants' Motions [filed August

3, 2022; ECF 20 and filed August 9, 2022; ECF 21] both be **granted**, and that all of Plaintiff's

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any
written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings
or recommendations to which the objections are being made. The District Court need not consider
frivolous, conclusive or general objections. A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a *de novo*
determination by the District Judge of the proposed findings and recommendations. *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file
written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings and legal
conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v.
Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656,

claims be dismissed with prejudice and without leave to amend. The Court recommends further

that the case be closed.

Entered this 10th day of November, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's</u>
<u>practice standards for any specific requirements concerning the filing and briefing of objections.</u>